STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ANTHONY NICASTRO
Acting Director
Office of Immigration Litigation

ROBERT O. LINDEFJELD
Trial Attorney (DC Bar No. 44423)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Civil Case No. 3:26-cv-1770 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| THE STATE OF NEW JERSEY; MIKIE SHERILL, Governor of New Jersey, in her official capacity, | |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## PRELIMINARY STATEMENT

1. Within hours of assuming the Presidency, President Trump took immediate action to fulfil his campaign promise to the American people and declared that a "national emergency exists at the southern border of the United States" from the unprecedented "illegal entry of aliens." Proclamation 10,886, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025). This declaration was necessary given the flood of illegal immigration into our Nation under the prior administration's open border policies incentivizing disregard for laws passed by Congress. As a result, millions of illegal aliens settled in American communities in flagrant violation of federal law, resulting in "significant threats to national security and public safety" and aliens "committing vile and heinous acts against innocent Americans." Exec. Order 14,159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025).

2. Despite the ongoing threat to American lives and communities President Trumps seeks to cure, the State of New Jersey, insists on harboring criminal offenders from federal law enforcement. Governor Mikie Sherill aims to intentionally obstruct federal law enforcement and celebrates thwarting the constitutional obligation of the President of the United States to take care that federal immigration law be faithfully executed. *See* Exec. Order 14,287, Protecting American Communities From Criminal Aliens, 90 Fed. Reg. 18761 (Apr. 28, 2025). Such blatant disregard for federal laws that have been on the books for over three decades is not merely a political statement, but is instead deliberate

action that jeopardizes the public safety of all Americans. But the Supremacy Clause of the United States Constitution prohibits a state from usurping Congress. Accordingly, the United States files this action to preserve the integrity of federal law penned by Congress aimed at preserving the safety and flourishing of our Nation.

3. Immediately following President Trump's declaration of a national emergency at our Southern border, the U.S. Department of Homeland Security ("DHS") and its components U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") prioritized nationwide efforts to identify and remove criminal illegal aliens from the United States in accordance with Federal law.

4. Federal immigration agents exercise discretion and common sense in carrying out their duties, including in deciding where arrests and other enforcement actions should be undertaken to best ensure the safety of the community. *See* Memorandum from former Acting Secretary of DHS Benjamine Huffman, Enforcement Actions in or Near Protected Areas (Jan. 20, 2025) ("DHS Memorandum") (Ex. A); Memorandum from Acting Director of ICE Todd M. Lyons, Civil Immigration Enforcement Actions In or Near Courthouses (May 27, 2025) ("ICE Memorandum") (Ex. B). In other words, there are no "bright line rules regarding where our immigration laws are permitted to be enforced," DHS Memorandum at 1, and instead, the location of a civil enforcement action is properly determined "on a case-by-case basis considering the totality of the circumstances," ICE Memorandum at 2.

5. Contrary to this common-sense approach, the State of New Jersey, at the direction of Governor Mikie Sherill, issued a blanket prohibition in Executive Order No. 12, barring federal immigration officers from "entering, accessing, or using nonpublic areas" of

state-owned property to enforce civil immigration law, and prohibiting federal immigration officers from using state-owned property as a "staging area, processing location, or operations base" to enforce civil immigration law. (Feb. 11, 2026) ("NJ Exec. Order No. 12") (Ex C.).

6.  Pursuant to the Executive Order, New Jersey executive branch departments and agencies "shall not permit or consent to federal immigration officers entering, accessing, or using nonpublic areas of State property for the purpose of facilitating federal enforcement of civil immigration law." NJ Exec. Order No. 12, § 2.

7.  Further, New Jersey executive branch departments and agencies "shall not permit or consent to federal immigration officers using State property as a staging area, processing location, or operations base for the purpose of facilitating federal enforcement of civil immigration law." NJ Exec. Order No. 12, § 3. This law poses an intolerable obstacle to federal immigration enforcement and directly regulates and discriminates against the Federal Government, in contravention of the Supremacy Clause.

8.  On its face, the Executive Order prevents federal immigration agents from using state-owned property accessible to local and state law enforcement. The sole reason for the exclusionary treatment of federal immigration agents enforcing our Nation's federal immigration laws is New Jersey's disagreement with the substance of the laws written by Congress that have remained on the books and largely unchanged for half a century.

9.  The State of New Jersey has adopted this policy with the clear objective of obstructing President Trump from enforcing federal immigration law. The policy is designed to and in fact does interfere with and discriminate against the Executive's enforcement of federal immigration law in violation of the Supremacy Clause.

10. The New Jersey Executive Order intentionally discriminates against the Federal Government by treating federal immigration authorities differently than other law enforcement agents through access restrictions to property.

11. The Supremacy Clause prohibits New Jersey and its officials from singling out the Federal Government for adverse treatment—as the challenged Executive Order does—thereby discriminating against the Federal Government. Using publicly owned property such as a parking lot, office building, or public garage for staging, base operations, or processing reduces the safety risks to the public, illegal aliens, and law enforcement officers.

12. Through the Executive Order, New Jersey obstructs federal law enforcement and facilitates the evasion of federal law by dangerous criminals, notwithstanding federal immigration agents' statutory mandate to detain and remove illegal aliens. *See, e.g.*, 8 U.S.C. § 1225(b) (requiring the mandatory detention of aliens subject to expedited removal during the pendency of their proceedings); *id.* § 1226(c) (requiring the mandatory detention of certain aliens who are removable due to criminal convictions or terrorist activities); *id.* § 1231(a) (requiring detention and removal of aliens who have a final order of removal).

13. The Executive Order also facially discriminates against federal immigration officials and treats local and state law enforcement more favorably by providing unrestricted access to state-owned property.

14. As this Court decided in *CoreCivic, Inc. v. Murphy*, "a state law that wholesale deprives the federal government of its chosen method of detaining individuals for violating federal law cannot survive Supremacy Clause scrutiny." *CoreCivic, Inc. v. Murphy*, 690 F. Supp.

3d 467, 478 (D.N.J. 2023). The Third Circuit affirmed that decision, holding that "the very essence of supremacy empowers the federal government to remove all obstacles to its action within its own sphere . . . [and] exempt its own operations from [state] influence." *CoreCivic, Inc. v. Governor of NJ*, 145 F.4th 315, 321 (3d Cir. 2025) (internal quotations and citations omitted).

15. Accordingly, the Executive Order is invalid under the Supremacy Clause and must be enjoined. The United States brings this declaratory and injunctive action to prohibit the State of New Jersey from enforcing the Executive Order that aims to thwart enforcement of federal law it disagrees with.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

17. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants State of New Jersey, and its Governor, reside within the District of New Jersey and acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

18. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

19. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Departments of Justice, State, and Homeland Security as well as DHS's component agencies ICE, and CBP.

20. Defendant State of New Jersey is a State of the United States of America.

21. Defendant Mikie Sherill is the Governor of New Jersey and is being sued in her official capacity.

### FEDERAL IMMIGRATION LAW

22. Stemming from its inherent rights and obligations as an independent Nation, the United States maintains a duty to control its borders, ensuring the safety and flourishing of its citizens. *See Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893); *Ping v. United States*, 130 U.S. 581, 603–04 (1889); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

23. Pursuant to that authority, the Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

24. Based on its inherent and constitutional powers to control and conduct relations with foreign nations, the United States has broad authority to establish immigration laws, the execution of which the States cannot obstruct or take discriminatory actions against. *See Arizona v. United States*, 567 U.S. 387, 394–95 (2012); *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring).

25. Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

26. These laws confer upon the Executive Branch extensive authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231. That only

makes sense given every sovereign maintains "complete discretion to determine who it deems worthy to enter all parts of its political community." *Qatanani v. Att'y Gen. United States of Am.*, 144 F.4th 485, 507 (3d Cir. 2025) (Matey, J., dissenting).

27. Congress has also codified basic principles of cooperation and comity between state and local authorities and the Federal Government. For example, federal law contemplates that removable aliens in state custody who have been convicted of state or local offenses will generally serve their state or local criminal sentences before being subject to removal, but that they will be taken into federal custody upon the expiration of their state prison terms. *See* 8 U.S.C. §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

28. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress has therefore directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Likewise, "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from," among other things, "[m]aintaining" "information regarding the immigration status, lawful or unlawful, of any individual," or "[e]xchanging such information with any other Federal, State, or local government entity." *Id.* § 1373(b).

29. Congress also authorized states and localities "to cooperate with the [Secretary] in the

identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

30. Congress further sought to affirmatively penalize efforts to obstruct immigration enforcement by, among other things, prohibiting the "conceal[ing], harbor[ing], or shield[ing] from detection, or attempts to" accomplish the same, of any "alien in any place, including any building or any means of transportation." *Id.* § 1324(a)(1)(A)(iii).

31. Courts have recognized that ICE may avail itself of publicly owned property. *See United States v. King Cnty., Washington*, 122 F.4th 740, 758 (9th Cir. 2024) ("Requiring this form of non-discriminatory access to [public] property consistent with the intergovernmental immunity doctrine does not create a back-end anti-commandeering problem. [The court] would not perceive a threat of unconstitutional commandeering when ICE uses county highways to transport immigration detainees from one place to another just because the county owns its highways.").

## SUPREMACY CLAUSE AND PREEMPTION PRINCIPLES

32. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

33. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

34. The Constitution's Supremacy Clause also embodies the doctrine of intergovernmental

immunity, which "generally immunizes the Federal Government from state laws that directly regulate or discriminate against it." *United States v. Washington*, 596 U.S. 832, 835 (2022) (citing *Baker*, 485 U.S. at 523).

35. A State or local law violates this doctrine if it "regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota*, 495 U.S. at 435. Discrimination occurs when a state or locality "treats someone else better than" the federal government, *id.* at 438, or singles out the federal government for "less favorable 'treatment.'" *Washington*, 596 U.S. at 839.

36. The doctrine operates even in the absence of a specific conflicting federal law, ensuring that "federal officers are immune from state interference with acts 'necessary and proper' to the accomplishment of their federal duties." *United States v. Ferrara*, 847 F. Supp. 964, 968 (D.D.C. 1993) (citing *In Re Neagle*, 135 U.S. 1, 10 (1890), *aff'd*, 54 F.3d 825 (D.C. Cir. 1995)).

37. In short, when states "substantially interfere[e] with [the federal government's] operations," they "directly regulate[] the federal government[.]" *Core Civic, Inc. v. Murphy*, 145 F.4th at 327.

## FACTUAL BACKGROUND

38. On January 20, 2026, the "Safe Communities Act" was signed into law. N.J. 6308 Bill A6308 Leg., 221 Sess. (2026).

39. The Act requires the Attorney General to "create certain model policies protecting personal freedoms." *Id.* The Act seeks to designate "schools, hospitals, shelters, courthouses, and other essential government services" as "safe" spaces. *Id.*

40. Directing "State, county, and municipal entities to attend to local priorities rather than

carrying out federal civil law enforcement initiatives," the Act's end is to restrict federal immigration efforts in certain spaces in the State of New Jersey. *Id.*

41. Consistent with the Act, on February 11, 2026, Governor Mikie Sherill issued NJ Exec. Order No. 12, which prohibits federal immigration officers from using nonpublic areas of state-owned property to enforce civil immigration law, and prohibits federal immigration officers from using state-owned property as a staging area, processing location, or operations base to enforce civil immigration law. NJ Exec. Order No. 12 (Ex. C).

42. Pursuant to the Executive Order, "Except as authorized by a judicial warrant or judicial order or as authorized under Paragraph 5 of this Order, Executive Branch departments and agencies shall not permit or consent to federal immigration officers entering, accessing, or using nonpublic areas of State property for the purpose of facilitating federal enforcement of civil immigration law." NJ Exec. Order No. 12, § 2.

43. Going further, the Executive Order states: "Except as authorized by a judicial warrant or judicial order or as authorized under Paragraph 5 of this Order, Executive Branch departments and agencies shall not permit or consent to federal immigration officers using State property as a staging area, processing location, or operations base for the purpose of facilitating federal enforcement of civil immigration law." NJ Exec. Order No. 12, § 3.

44. The Executive Order broadly defines "State property" as "facilities, premises, and parcels, or portions thereof, that are owned, operated, leased, or controlled by New Jersey Executive Branch departments and agencies, including but not limited to office buildings, parking lots, and parking garages." NJ Exec. Order No. 12, § 1(a).

45. The Executive Order broadly defines "Executive Branch departments and agencies" as "any of the principal departments in the Executive Branch of New Jersey State government and any agency, authority, board, bureau, commission, division, office, or other instrumentality within or created by any such department, and any independent State authority, commission, instrumentality, or agency over which the Governor exercises executive authority, as determined by the Attorney General." NJ Exec. Order No. 12, § 1(b).

46. In an accompanying press release parading the Executive Order, the State of New Jersey identifies federal immigration agents, and ICE in particular, as prohibited from using State property for immigration operations. State of New Jersey Press Release, *Governor Sherrill Takes Action to Protect New Jerseyans' Safety, Defend Constitutional Rights* (Feb. 11, 2026), https://www.nj.gov/governor/news/2026/20260211a.shtml.

47. The State of New Jersey's press release specifically addresses restrictions on ICE. *See id.* ("The executive order prohibits ICE agents from entering, accessing, or using nonpublic areas of State property for their operations unless authorized by a judicial warrant."). And revealing the true motive for Executive Order 12, the press release parrots Governor Sherrill's accusations that the Executive's actions are lawless, unconstitutional, and violent:

> Today, we are making clear that the Trump's administration's lawless actions will not go unchecked in New Jersey. Given ICE's willingness to flout the Constitution and violently endanger communities – detaining children, arresting citizens, and even killing several innocent civilians – I will stand up for New Jerseyans['] right to be safe.

*See id.* The Press Release even encourages citizens of the state to engage in monitoring ICE activity. *See id.* ("As part of the actions announced by Governor Sherrill today, the

Office of the Attorney General will launch a portal for New Jersey residents to upload their interactions with ICE in New Jersey.").

48. Moreover, the language of the Executive Order itself seeks to villainize federal immigration agents by referring to their work as "deeply troubling trends in militarized federal civil immigration enforcement in cities and states across the United States." NJ Exec. Order No. 12, § 1(b).

49. In restricting federal civil immigration agents from accessing non-public areas of State property and prohibiting certain operational functions on State property, the State of New Jersey is precluding federal immigration agents from conducting safe and effective operations.

## THE CHALLENGED PROVISIONS' IMPACT ON FEDERAL IMMIGRATION ENFORCEMENT

50. The Executive Order poses an obstacle to the United States' enforcement of federal immigration laws and discriminates against federal immigration enforcement officials.

51. The Executive Order impedes federal immigration enforcement in New Jersey by dictating where federal immigration officers can enforce civil immigration laws.

52. All resulting in "undue interference with the implementation of Executive Branch immigration policies" that result in harm to the federal Sovereign. *Ramos v. Att'y Gen. United States*, No. 25-2946, 2025 WL 2950133, at *6 (3d Cir. Oct. 17, 2025).

*Prohibiting Access to Nonpublic Areas of State Property*

53. The New Jersey Executive Order prohibits New Jersey executive branch departments and agencies from allowing federal immigration officers to enter, access, or use nonpublic areas of State property for the purpose of immigration enforcement. NJ Exec. Order 12, § 2.

54. This prohibition will disrupt will "substantially interfere[s]" with DHS's civil immigration enforcement operations at both state correctional facilities and courthouses. *Core Civic, Inc. v Murphy*, 145 F.4th at 327.

55. ICE conducts civil immigration enforcement actions in or near courthouses. ICE Memorandum at 2. That enforcement action targets "national security or public safety threats;" "specific aliens with criminal convictions;" "gang members;" and other aliens who are unlawfully present. *Id.*

56. For the safety of the public, federal immigration officers, and illegal aliens themselves, "civil immigration enforcement actions in or near courthouses should, to the extent practicable, continue to take place in non-public areas of the courthouse, be conducted in collaboration with court security staff, and utilize the building's non-public entrances and exits." *Id.*

57. The New Jersey Executive Order obstructs such operations in at least three ways. *First*, the New Jersey Executive Order prohibits federal immigration agents from accessing non-public areas at all. NJ Exec. Order 12, § 2. *Second*, the New Jersey Executive Order prohibits any court security staff that are members of "Executive Branch departments and agencies," *id.* § 1(b), from cooperating with federal immigration agents for the purpose of civil immigration enforcement, *id.* § 2. *Third*, even as to entering and exiting the building, federal immigration agents are restricted from accessing non-public entrances and exits. *Id.* There is no indication on the face of the New Jersey Executive Order that officials working for the Federal Bureau of Prisons, Drug Enforcement Administration, Bureau of Alcohol, Tabacco, and Firearms, or the Federal Bureau of Investigations are subjected to similar regulation and discrimination.

58. Additionally, though not exhaustively, the New Jersey Executive Order seeks to thwart ICE's ability to arrest dangerous criminals who are already in state custody through the use of immigration detainers authorized under the INA and its implementing regulations. 8 U.S.C. § 1103(a)(3); *see also* 8 C.F.R. § 287.7 ("Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency"); *see generally* U.S. Immigration and Customs Enforcement, *Immigration Detainers*, https://www.ice.gov/immigration-detainers (last accessed: Feb. 21, 2026).

59. "An immigration detainer is a request from ICE that asks a federal, state or local law enforcement agency—including jails, prisons or other confinement facilities—to: Notify the requesting agency as early as possible before they release a removable alien; [h]old the alien for up to 48 hours beyond the time they would ordinarily release them so DHS has time to assume custody in accordance with federal immigration law." *Id.*

60. The reason for immigration detainers is simple but consequential. "It's safer to assume custody of removable aliens in a secure, private environment." *Id.* When states refuse to honor immigration detainers, ICE is left with no other mechanism to detain such criminal removable aliens other than at-large arrests in local communities. Such arrests "are unpredictable and can be dangerous to the public, aliens and federal law enforcement officers." *Id.*

61. By prohibiting access to "nonpublic areas of State Property for the purpose of facilitating federal enforcement of civil immigration law[,]" NJ Exec. Order 12, § 2, New Jersey effectively denies any and all immigration detainers issued to its "executive Branch departments and agencies[,]" *id.*, such as the New Jersey Department of Corrections.

State of New Jersey, Department of Corrections, *About Us*, https://www.nj.gov/corrections/pages/aboutUs.html ("The New Jersey Department of Corrections is comprised of 9 correctional facilities, 11 Residential Community Release Programs, and 1 Assessment Center."). Since state prison officials are prohibited by the New Jersey Executive Order from allowing federal immigration officials into nonpublic areas of state prisons and correctional facilities, ICE is unable to "take the alien into custody in the facility's safe setting." U.S. Immigration and Customs Enforcement, *Immigration Detainers*, https://www.ice.gov/immigration-detainers (last accessed: Feb. 21, 2026).

62. By obstructing and prohibiting arrests in nonpublic areas of state prisons, correctional facilities, and state courthouses, the New jersey Executive Order "directly regulates the federal government by substantially interfering with a core federal function." *CoreCivic, Inc.*, 145 F.4th at 327.

*Prohibiting Operations on State Property*

63. To enforce the Executive Order, the State of New Jersey directs Executive Branch departments and agencies to preclude federal immigration officers from using State property as a staging area, processing location, or operations base for the purpose of facilitating federal enforcement of civil immigration law. Notably, the Executive Order precludes *only* federal immigration agents from accessing these areas.

64. DHS, through ICE and CBP regularly use state-owned property accessible to the public for certain immigration activities now prohibited by the Executive Order: staging, base operations, and processing.

65. DHS, through ICE and CBP, performs significant law enforcement activities in New

Jersey. For example, staging, operations including custodial transfers, and processing.

66. Although the Executive Order was recently issued, Courts have stated "that Plaintiffs need not wait until an enforcement action is initiated against them to demonstrate irreparable harm." *New Jersey Civ. Just. Inst. v. Grewal*, No. CV 19-17518, 2021 WL 1138144, at *7 (D.N.J. Mar. 25, 2021).

67. The Third Circuit in *CoreCivic, Inc.* acknowledged that "'the very essence of supremacy' empowers the federal government to 'remove all obstacles to its action within its own sphere . . . [and] exempt its own operations from [state] influence.'" *CoreCivic, Inc,* 145 F.4th at 321 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819)).

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE (PREEMPTION)

68. Plaintiff hereby incorporates paragraphs 1 through 67 of the Complaint as if fully stated herein.

69. The United States Constitution, and the Supremacy Clause, provides that "Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

70. The Courts have decided "it is necessary for uniformity that the laws of the United States be dominant over those of any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). That principle is only strengthened in the immigration context. *See* U.S. Const. art. I, § 8, cl. 4.

71. The State of New Jersey's Executive Order creates burdensome obstacles to the enforcement of federal immigration law. The Executive Order "stand[s] as an obstacle to the accomplishment and execution" of federal immigration law. *Arizona*, 567 U.S. at

406.

72. The State of New Jersey's Executive Order is therefore invalid due to conflict preemption and the Supremacy Clause. The Executive Order attempts to severely restrict the locations in which federal immigration agents can perform their duties. The strict limitations thus impede the federal immigration agents' ability to engage in civil immigration enforcement according to the laws of the United States. *See, e.g.*, 8 U.S.C. §§ 1226a, 1226(c), 1231(a), 1357; *see also* 18 U.S.C. §§ 372, 1071. The Executive Order violates the Supremacy Clause because it "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *United States v. Locke*, 529 U.S. 89, 109 (2000).

73. Federal immigration law therefore preempts the challenged the State of New Jersey's Executive Order.

74. Accordingly, the State of New Jersey's Executive Order as applied to the Federal Government violates the Supremacy Clause and is thus invalid.

## **COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE**

## **(UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)**

75. Plaintiff hereby incorporates paragraphs 1 through 74 of the Complaint as if fully stated herein.

76. Defendants' enforcement of the challenged Executive Order also discriminates against the Federal Government as it only applies to federal authorities enforcing federal immigration law. It has no application to any other citizen, state, or federal entity.

77. The Executive Order singles out federal immigration officials, expressly and implicitly, for unfavorable and uncooperative treatment when no other member of the public or law

enforcement is so treated. This is an undue and burdensome regulation specifically aimed at impeding the Federal Government.

78. The intergovernmental immunity doctrine dictates that discriminatory targeting of the Federal Government is unlawful. *See*, *e.g., Washington*, 596 U.S. at 839 ("[S]tate law discriminates against the Federal Government . . . if it 'singles them out' for less favorable 'treatment' or if it regulates them unfavorably on some basis related to their governmental 'status.'" (citations and alterations omitted)).

79. Accordingly, the Executive Order violates the doctrine of Intergovernmental Immunity and therefore alternatively is invalid on that basis.

## COUNT THREE – VIOLATION OF THE SUPREMACY CLAUSE
## (UNLAWFUL REGULATION OF FEDERAL GOVERNMENT)

80. Plaintiff hereby incorporates paragraphs 1 through 79 of the Complaint as if fully stated herein.

81. Lastly, Defendants' enforcement of the challenged Executive Order effects direct regulation of the Federal Government by eliminating nonpublic spaces of State property as permissible locations for facilitating federal enforcement of civil immigration law, and by eliminating State property as a staging area, processing location, or operations base for the purpose of facilitating federal enforcement of civil immigration law.

82. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *Mayo*, 319 U.S. at 445.

83. Accordingly, the challenged Executive Order violates the doctrine of Intergovernmental Immunity alternatively on that basis and thus is invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1.  That this Court enter a judgment declaring that the challenged Executive Order violates the Supremacy Clause and is therefore invalid;

2.  That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing or implementing the challenged Executive Order;

3.  That this Court award the United States its costs and fees in this action; and

4.  That this Court award any other relief it deems just and proper.

DATED: February 23, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ANTHONY NICASTRO
Acting Director
Office of Immigration Litigation

*/s/ Robert O. Lindefjeld*
ROBERT O. LINDEFJELD
Trial Attorney (DC Bar No. 44423)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station

Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

## LOCAL CIVIL RULE 101.1(f) DESIGNATION

The United States designates the United States Attorney's Office to receive notices and papers at the following address: Civil Chief, U.S. Attorney's Office 970 Broad Street, 8th Floor, Newark, NJ 07102.