**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF NEW JERSEY; MIKIE SHERRILL, Governor of New Jersey, in her official capacity,<br><br>    *Defendants.* | Case No. 3:26-cv-01770<br><br>Judge: Georgette Castner<br>Magistrate Judge: Justin T. Quinn |

**BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM
AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF AND
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

John M. Miano
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
jmiano@verizon.net

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* the Federation for American Immigration Reform is a 501(c)(3) not for profit charitable organization incorporated in the District of Columbia. FAIR has no parent corporation. It does not issue stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF AUTHORITIES........................................................................................ iii

STATEMENT OF INTEREST..................................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................... 1

ARGUMENT ............................................................................................................... 2

CONCLUSION............................................................................................................. 8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*,
    567 U.S. 387 (2012)................................................................................................2

*CoreCivic, Inc. v. Governor of New Jersey*,
    145 F.4th 315 (3d Cir. 2025)................................................................................4

*Dennis v. United States*,
    384 U.S. 855 (1966)................................................................................................5

*Lozano v. City of Hazleton*,
    724 F.3d 297 (3d Cir. 2013)................................................................................2

*Oneok, Inc. v. Learjet, Inc.*,
    575 U.S. 373 (2015)................................................................................................2

*United States v. Automated Medical Laboratories, Inc.*,
    770 F.2d 399 (4th Cir. 1985)................................................................................5

*United States v. Dugan*,
    No. 2:25-cr-00089 (E.D. Wis. 2025)....................................................................7

*United States v. Yarbrough*,
    852 F.2d 1522 (9th Cir. 1988)................................................................................5

**Executive Orders**

Executive Order No. 12, Prohibits Federal Immigration Officers from Entering or Using State Property for the Purpose of Civil Immigration Enforcement, Except Under Certain Circumstances (N.J. Feb. 11, 2026) ...................................................................1, 2, 3, 4

**Statutes**

8 U.S.C. § 1101(a)(28)................................................................................................3

8 U.S.C. § 1101(b)(3)................................................................................................3

8 U.S.C. § 1324(a)(1)(A)(iii) ................................................................................2, 3

8 U.S.C. § 1324(a)(1)(A)(v)(I) ................................................................................5

8 U.S.C. § 1324(a)(1)(A)(v)(II) ..........................................................................2, 3

8 U.S.C. § 1324(a)(1)(B)(ii) ................................................................................2, 3

18 U.S.C. § 371 ...................................................................................................................4

18 U.S.C. § 1001 .................................................................................................................5

18 U.S.C. § 1071 ..............................................................................................................5, 6

18 U.S.C. § 1505 ..............................................................................................................5, 6

18 U.S.C. § 1512(c)(2) .........................................................................................................6

18 U.S.C. § 1512(k) ..............................................................................................................6

**STATEMENT OF INTEREST[1]**

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policies that are in America's best interest. In pursuit of this mission, FAIR regularly participates in litigation involving immigration law enforcement and border integrity. Because this case concerns state executive action affecting the enforcement of federal immigration law, FAIR has a substantial interest in this case.

**SUMMARY OF THE ARGUMENT**

Executive Order No. 12 bars federal civil immigration officers from entering, accessing, or using nonpublic areas of state-owned property without a judicial warrant, even when removable aliens may be present there. That directive raises a Supremacy Clause problem because it does more than withhold voluntary assistance: it affirmatively directs state officials to deny federal officers access to places where immigration enforcement may need to occur. In such circumstances, EO 12 places state officials in an untenable position: obeying the Order may require conduct that violates federal criminal statutes, while complying with federal law would require disregarding the Order. At a minimum, EO 12 creates a direct operational conflict with federal law.

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

## ARGUMENT

Executive Order No. 12 ("EO 12") conflicts with federal law and obstructs immigration enforcement. This case presents a substantial conflict-preemption problem because EO 12 does more than allocate state resources or decline voluntary cooperation. It directs state officials to deny federal civil immigration officers access to nonpublic state property in circumstances where federal law contemplates enforcement activity. The Supremacy Clause does not permit a State to interpose its own authority in that way. Where obedience to state law requires conduct inconsistent with federal law, compliance with both is impossible. *Lozano v. City of Hazleton*, 724 F.3d 297, 302-03 (3d Cir. 2013) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)); *see also Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). The statutory text shows why.

What are generally referred to as the "anti-harboring" provisions of the INA—located at Title II, Chapter 8, § 274 and codified at 8 U.S.C. § 1324—read in pertinent part:

**Bringing in and Harboring Certain Aliens**

**(a) Criminal penalties.—**

**(1)(A)** Any person who—
...
**(iii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; . . .

**(v)** (I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

**(B)** A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—
...
**(ii)** in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, United States Code, imprisoned not more than 5 years, or both.

8 U.S.C. § 1324(a)(1)(A)(iii), (v)(II), (B)(ii).

The INA defines "person" when used in Title II as "an individual or an organization." 8 U.S.C. § 1101(b)(3). The term "organization" is defined broadly to include, among other things, an organization, corporation, company, partnership, association, trust, foundation, fund, or group of persons associated together for joint action. 8 U.S.C. § 1101(a)(28). Section 1324 thus applies to institutional actors and organized entities alike.

By preventing state officials from permitting federal civil immigration officers to enter, access, or use nonpublic areas of state-owned property without a judicial warrant, Executive Order No. 12 requires conduct that goes beyond mere noncooperation. Where federal officers seek access to a nonpublic state facility in order to locate, identify, question, or apprehend a removable alien believed to be present there, the State's mandatory denial of access may operate to "conceal[], harbor[], or shield[] from detection" that alien in "any place, including any building," within the meaning of 8 U.S.C. § 1324(a)(1)(A)(iii). Complaint, Ex. 4, Executive Order No. 12 (Feb. 11, 2026), ECF No. 1-4.

To be sure, a state may choose not to deploy its own personnel or resources in aid of federal enforcement, but EO 12 goes further: it directs state officials to deny access to nonpublic state premises in circumstances where federal officers are attempting to carry out federal law. EO 12 therefore goes beyond mere noncooperation, and instead requires an affirmative state action.

This distinction matters. When federal immigration officers seek to enter a nonpublic area of a state facility to locate, identify, question, or apprehend an alien believed to be present there, and state officials refuse access solely because EO 12 requires them to do so, the State is not simply remaining passive. It is affirmatively interposing state authority between federal officers

3

and the place where the alien is located. In such circumstances, the denial of access may operate to shield the alien from detection in "any place, including any building," within the meaning of § 1324(a)(1)(A)(iii).

Merely withholding voluntary assistance differs from actively excluding federal officers from places where removable aliens may be found. EO 12 requires the latter. At minimum, it creates a direct operational conflict with the federal anti-harboring prohibition and with the federal government's ability to carry out immigration enforcement in practice.

The Third Circuit's reasoning in *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025), reinforces this conclusion. There, New Jersey sought to bar private parties from contracting with ICE to house immigration detainees in the State, and the Third Circuit held that the State could not, through state law, foreclose the means by which the federal government carried out its immigration detention functions. *Id.* at 323-24. The court also emphasized that Supremacy Clause analysis must turn on the practical effects of the state law or policy rather than formal labels. *Id.* at 322. Here, the practical effect of EO 12 is to give state officials gatekeeping authority over whether federal civil immigration officers may enter nonpublic state premises to carry out enforcement activity. That sort of affirmative interference is materially different from a mere refusal to assist.

Functionally, EO 12 directs state officials to bar federal civil immigration officers from nonpublic state property in circumstances where those officers may be attempting to locate or apprehend removable aliens. That statewide directive goes beyond passive inaction and demands affirmative obstruction of federal immigration enforcement.

In addition to § 1324, compliance with EO 12 could expose state actors to liability under other federal criminal provisions such as 18 U.S.C. § 371 (conspiracy to defraud the United

4

States or obstruct lawful government functions), 18 U.S.C. § 1505 (obstruction of proceedings before departments or agencies), 18 U.S.C. § 1001 (false statements or concealment of material facts), and 18 U.S.C. § 1071 (concealing a person from arrest). These statutes may be interpreted broadly in ways that could reach systematic non-cooperation with federal immigration enforcement. *See*, *e.g.*, *Dennis v. United States*, 384 U.S. 855, 861 (1966) (explaining that the defraud clause of § 371 "reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government"); *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 406 (4th Cir. 1985) (holding that § 1001 covers willful concealment of material facts in matters within federal jurisdiction); *United States v. Yarbrough*, 852 F.2d 1522, 1543 (9th Cir. 1988) (holding that § 1071 reaches any act of providing assistance, including food and shelter, to aid a person in avoiding detection and apprehension). Indeed, federal authorities have recently investigated and prosecuted law enforcement and judicial officials for harboring-style violations. Concrete examples include:

     a.       <u>Sheriff James R. Metts (Lexington County, South Carolina, 2014)</u>: A sitting sheriff pleaded guilty to conspiracy to harbor and conceal illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(v)(I) for using his official position and county resources to shield undocumented individuals from federal detection and removal. Metts intervened on behalf of illegal aliens held in the Lexington County Detention Center who were subject to ICE detainers and immigration processing. He overrode or ignored federal detainers, arranged for their release, and used county jail resources and his authority as sheriff to prevent their transfer to federal custody—all while knowing the aliens were unlawfully present. *See* Press Release, U.S. Attorney's Office, District of South Carolina, "Former Lexington County Sheriff James R. Metts Pleads Guilty to Conspiring to Harbor and Conceal Illegal Aliens" (Dec. 30, 2014), available at

5

https://www.fbi.gov/contact-us/field-offices/columbia/news/press-releases/former-lexington-county-sheriff-james-r.-metts-pleads-guilty-to-conspiring-to-harbor-and-conceal-illegal-aliens.

      b.      <u>Judge Shelley M. Richmond Joseph (Newton District Court, Massachusetts, 2018)</u>: A sitting state court judge was indicted for conspiracy to obstruct justice (18 U.S.C. § 1512(k)) and obstruction of justice (18 U.S.C. § 1512(c)(2)) after allegedly helping a twice-deported illegal alien evade ICE agents at her courthouse. See Indictment, United States v. Joseph, No. 1:19-cr-10141 (D. Mass. Apr. 2019), available at https://storage.courtlistener.com/recap/gov.uscourts.mad.209407/gov.uscourts.mad.209407.1.0_1.pdf. In April 2018, Jose Medina-Perez (a Dominican national who had been deported twice previously) appeared before Judge Joseph on state criminal charges. ICE agents were waiting in the front lobby of the Newton District Court to take him into custody pursuant to an immigration detainer. According to the federal indictment, Judge Joseph and a court officer directed Medina-Perez to leave through a rear courthouse exit, allowing him to evade the waiting federal agents. Federal prosecutors charged the conduct as obstruction of justice and conspiracy, alleging that Judge Joseph used her official position and knowledge of the courthouse layout to shield the alien from detection and arrest by ICE. Reuters, "Reprimand recommended for Massachusetts judge accused of helping man evade ICE" (November 7, 2025), available at https://www.reuters.com/legal/government/reprimand-recommended-massachusetts-judge-accused-helping-man-evade-ice-2025-11-07/.

      c.      <u>Judge Hannah Dugan (Milwaukee County Circuit Court, Wisconsin, April 2025)</u>: A sitting state court judge was indicted for obstruction of a federal proceeding (18 U.S.C. § 1505) and concealing a person from arrest (18 U.S.C. § 1071) after allegedly helping a previously-deported Mexican national evade ICE agents at her courthouse. *See* Indictment,

*United States v. Dugan*, No. 2:25-cr-00089, ECF No. 6 (E.D. Wis. May 13, 2025), available at

https://storage.courtlistener.com/recap/gov.uscourts.wied.111896/gov.uscourts.wied.111896.6.0.p

df. An alien, Eduardo Flores-Ruiz, who was appearing before Judge Dugan on state assault

charges, was the subject of an active ICE detainer. When federal agents arrived outside her

courtroom to take him into custody, Dugan escorted Flores-Ruiz out a non-public side door and

hallway, allowing him to leave the building and evade immediate arrest. He was later

apprehended outside the courthouse. Reuters, "Trump administration's arrest of judge stirs

debate over immigration courthouse enforcement" (May 13, 2025) available at

https://www.reuters.com/world/us/trump-administrations-arrest-judge-stirs-debate-over-

immigration-courthouse-2025-05-13/. A jury convicted Judge Dugan of obstructing a federal

proceeding in violation of 18 U.S.C. § 1505. *See* Jury Verdict, *United States v. Dugan*, No. 2:25-

cr-00089, ECF No. 96 (E.D. Wis. Dec. 18, 2025), available at https://storage.courtlistener.com/

recap/gov.uscourts.wied.111896/gov.uscourts.wied.111896.96.0.pdf.

  To the extent Defendants argue EO 12 is nothing more than an internal rule governing

state employees and state property, their characterization does not resolve the practical effects of

the policy. EO 12 does not merely reflect a State's decision to withhold voluntary assistance; it

directs state officials to actively deny federal immigration officers access to nonpublic state

premises in circumstances where those officers may be attempting to locate or apprehend

removable aliens. In such circumstances, the Order functions as an affirmative state interposition

into federal enforcement activity, not simply a passive refusal to help.

  Accordingly, EO 12 requires conduct that may violate federal criminal statutes, including

the anti-harboring statute. It therefore conflicts with federal law because, in the circumstances

described above, obedience to both federal and state law may be impossible. EO 12 does not

merely force state actors to decline cooperation; it affirmatively interposes state authority in the path of federal immigration enforcement. Defendants' motion to dismiss should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: June 3, 2026                                Respectfully submitted,

/s/ John Miano
JOHN M. MIANO
N.J. Bar No. 020012005
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
jmiano@verizon.net

*Counsel for Amicus Curiae*
Federation for American Immigration Reform

8

## CERTIFICATE OF COMPLIANCE

Counsel for *amicus curiae* certifies that this brief complies with the applicable requirements of the Local Civil Rules of the United States District Court for the District of New Jersey, including Local Civil Rule 7.2, and Judge Castner's procedures governing motion practice. Counsel further certifies that the brief includes a table of contents and table of authorities as required, that the text is in at least 12-point type, and that the filing is being submitted in searchable PDF format consistent with Judge Castner's procedures. The word count is 2,032.

/s/ John Miano

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, I electronically filed the foregoing Brief of *Amicus Curiae* with the Clerk of Court for the United States District Court for the District of New Jersey by using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ John Miano